UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,         )
                                  )
                                  )
vs.                               )     CRIMINAL ACTION
                                  )     NO. 07-1631-TSH
                                  )
LUIS ROSARIO and                  )
ANTONIO CAPELLA-MATOS,            )
    Defendants                    )
                                  )

**MEMORANDUM AND DECISION ON PROBABLE CAUSE AND
THE GOVERNMENT'S MOTION FOR DETENTION**
May 17, 2007

HILLMAN, M.J.

**I. Nature of the Offense and the Government's Motion**

On May 1, 2007, a Complaint issued charging Luis Rosario a/k/a "Gordo", Antonio Capella-Matos a/k/a "Barbaro", "Plinio Pizcaino", "Jorgito" and "Jorge"[1], and others with Conspiring to Possess with Intent to Distribute and Distribution of Five Kilograms or more of Cocaine, in violation of 21 U.S.C. §846. At these Defendants' initial appearance on May 2, 2007, the Government moved for a detention hearing pursuant to 18 U.S.C. §§3142(f)(1)(C) (Defendants are charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act"), and (f)(2)(A)(risk of flight). A probable cause/detention hearing was scheduled for both Defendants on May 7, 2007. Luis

---

[1] At his probable cause/detention hearing, the Court was informed that this Defendant's true name was Plinio Vizcaino. For purposes of this Memorandum and Decision, I am going to refer to this Defendant by the name with which he has been charged in the Complaint, Antonio Capella-Matos.

Rosario's detention hearing went forward on that date; Capella-Matos's probable cause/detention hearing was continued until May 11, 2007, at his request.

Kevin O'Neil, a Massachusetts State Police Trooper currently assigned as a Task Force Agent with the Drug Enforcement Agency testified on behalf of the Government at both probable cause/detention hearings. Additionally, Ryan Arnold of the Immigration and Customs Enforcement Agency ("ICE") testified for the Government at Luis Rosario's hearing.

## II. Findings Of Fact

Since approximately September 2006, law enforcement officials have conducted an investigation targeting the activities of a suspected narcotics trafficking organization in the Lawrence, Massachusetts area. Capella-Matos was the primary target. Law enforcement agents utilized Title III interception of wire communications, including multiple cellular telephones subscribed to Capella-Matos, confidential informants and physical surveillance. Seth forth below is a summary of some of the intercepted telephone conversations and/or drug transactions involving these Defendants.

On November 17, 2006, law enforcement agents intercepted a series of conversations between Capella-Matos and Edgar Martinez-Ramos, who has also been named in the Complaint. From the context of those conversations, Agent O'Neil believes that Capella-Matos arranged to pick up a kilogram of cocaine from Martinez-Ramos; that after picking up the cocaine, he delivered it to someone who was not satisfied with the quality and therefore, returned it to Capella-Matos; that Capella-Matos was going to try to deliver the cocaine to someone else the next morning; and that if Capella-Matos was able to complete the sale, he would pay Martinez-Ramos later the next day. On November 18, 2006, Capella-Matos again spoke with Martinez-

Ramos. From the substance of those conversations, Agent O'Neil believes that Capella-Matos indicated that he was still waiting for the potential purchaser, that he would be interested in buying more cocaine from Martinez-Ramos for a lower price[2] and after the two discussed a price, he indicated that if the potential purchaser liked it, he would take two more kilograms. Cocaine was never expressly referred to in these conversations and no drugs were recovered by law enforcement agents as a result of these conversations.

On November 19, 2006, Capella-Matos had a series of telephone conversations with Johan Ulloa-Aquino, who has also been named in the Complaint. From the substance of these conversations, Agent O'Neil believes that Capella-Matos was attempting to get cocaine from Martinez-Ramos which he would deliver to Ulloa-Aquino, who would deliver it to an unknown third person. Capella-Matos expected to receive 500 grams of cocaine from Martinez-Ramos and Ulloa-Aquino wanted to purchase up to $10,000 worth of that cocaine. Cocaine was never expressly referred to in these conversations and no drugs were recovered by law enforcement agents as a result of these conversations.

From November 21-26, 2006, a series of telephone conversations were intercepted between Capella-Matos, Martinez-Ramos, Luis Castillo a/k/a "El Barero", Alejandro Reyes-Santiago and Engles Caba, all of whom are named in the Complaint. Agent O'Neil believes that as a result of these conversations, Reyes-Santiago distributed a multi-kilogram quantity of cocaine to Capella-Matos and that Capella-Matos re-distributed a portion of that cocaine to Caba

---

[2]From the conversations, Agent O'Neil believes that Capella-Matos was paying Martinez-Ramos $19,500 a kilogram and was trying to negotiate the price down to $19,000 a kilogram if he purchased three kilograms in total.

3

and Castillo. Cocaine was never expressly referred to in these conversations and no drugs were recovered by law enforcement agents as a result of these conversations.

From December 14-17, 2006, a series of telephone conversations were intercepted between Capella-Matos, Oscar Rosario and Yefrey Rodriguez. Agent O'Neil believes that as a result of these conversations, Capella-Matos had Rodriguez deliver a multi-kilogram quantity of cocaine to Oscar Rosario and Oscar Rosario made a partial payment for the cocaine. Cocaine was never expressly referred to in these conversations and no drugs were recovered by law enforcement agents as a result of these conversations.

On January 26, 2007, a telephone call was intercepted between Capella-Matos and Alejandro Reyes-Santiago. Based on his training and experience, Agent O'Neil believes that the discussion between the two men concerned Capella-Matos wanting to obtain 100 grams of cocaine from Reyes-Santiago for a customer; Capella-Matos had a kilogram of cocaine which he did not want to open to obtain such a small amount. There was no express mention of drugs or drug quantities and no drugs were recovered as a result of this conversation.

A series of telephone conversations were intercepted on February 13, 2007 between Luis Rosario and Roberto Esquilin-Rodriguez, who has also been named in the Complaint. From the substance of the conversations, Agent O'Neil believes that Esquilin-Rodriguez received a quantity of cocaine and then delivered 200 grams of cocaine to Luis Rosario. Cocaine was never expressly referred to in these conversations and no drugs were recovered by law enforcement agents as a result of these conversations.

On the morning of February 21, 2007, Capella-Matos telephoned Castillo. Castillo told Capella-Matos that he was ready and to line up his people. About two hours later, Capella-Matos

told Castillo to bring him "2" instead. Based on his training and experience, Agent O'Neil believes Capella-Matos was telling Castillo to bring him 2 kilograms of cocaine. Agent O'Neil has listened to subsequent conversations between Capella-Matos and other individuals who have been charged in the Complaint; neither drugs nor drug proceeds are ever expressly mentioned in these conversations. However, based on his training and experience, Agent O'Neil believes that in a subsequent conversation between Capella-Matos and Oscar Rosario, Capella-Matos indicated that he was picking up cocaine to deliver to someone else. Sometime later, Castillo called Capella-Matos and told him he was there and to cross the street, open the door and get in. Agent O'Neil believes that Capella-Matos and Castillo then completed a drug transaction. Finally, Agent O'Neill believes that in a conversation between Oscar Rosario and Capella-Matos which took place later that afternoon, Capella-Matos indicates to Oscar Rosario that he was in the process of delivering a payment to Castillo for the cocaine purchased earlier that day. A few minutes later, Capella-Matos called Castillo and told him he was there. Agent O'Neil believes that at this time, Capella-Matos delivered cash to Castillo for the cocaine purchased earlier that day. Law Enforcement agents who were physically surveilling Capella-Matos at this time observed him go to Castillo's place of employment in Lawrence, Massachusetts and hand Castillo a bag.

On February 22, 2007, Castillo was observed parking in the rear of a building in Lawrence, Massachusetts (near where he had met Cappella-Matos the day before) and go inside. Approximately ten minutes later, a GMC Yukon, known to be used by Luis Rosario, arrived at the same address. Luis Rosario and Carlos Bravo, who has also been named in the Complaint, exited the Yukon and attempted to enter the front of the building. When the were unable to do

so, they re-entered the Yukon and drove around to the back and parked. Castillo then exited the building carrying a blue plastic bag which he handed to Bravo, who was sitting in the front passenger seat. The Yukon then left the area at a high rate of speed. Agents determined that the persons in the Yukon had detected surveillance and they followed the vehicle. The Yukon then ran two stops signs at a high rate of speed. Bravo was observed dropping a blue bag out of the window of the vehicle. The Yukon was stopped and Luis Rosario and Bravo were arrested. Agents retrieved the blue bag which was found to contain approximately one kilogram of a white powdery substance which field tested positive for the presence of cocaine.

A series of telephone conversations were intercepted on April 4-10, 2007. Capella-Matos was involved in the conversations. From the substance of these conversations, Agent O'Neil believes that Elieser Mercedes, who is also named in the Complaint, delivered a quantity of cocaine to Capella-Matos. There were additional conversations which Agent O'Neil believes concerned: Cocaine that Mercedes had available; an alternate source off cocaine for Capella-Matos, which was of a lesser quality; cocaine which Mercedes had available for sale; and whether the price of kilograms of cocaine was going to come down. Cocaine was never expressly referred to in these conversations and no drugs were recovered by law enforcement agents as a result of these conversations.

On May 7, as the result of intercepted telephone conversations which led them to believe a drug transaction was to take place, law enforcement agents were surveilling Capella-Matos. It was believed that Capella-Matos had arranged to purchase 1 kilogram of cocaine that day. Capella-Matos appears to have detected the surveillance; he stated in intercepted telephone conversations that he suspected that law enforcement officials were following him and therefore,

he had left his car and returned home in a cab. He also stated that he would not be leaving the house for the remainder of the day and that he intended to pack up and leave on Tuesday or Wednesday. No transaction took place. That night, Capella-Matos was arrested by ICE for immigration violations. After Capella-Matos was arrested and read his *Miranda* rights, he admitted to being a multi-kilogram cocaine dealer. Capella-Matos, who has indicated that his true name is Vizcaino Plinio, possessed a Massachusetts license, with his picture, in the name of Antonio Capella-Matos.

### III. Probable Cause

From the evidence presented, including Capella-Matos's own admission, I find that there is probable cause for the offense charged against these Defendants in this Complaint.

### IV. Discussion of the Bail Reform Act

In order to detain a person pending trial under 18 U.S.C. §3142 (The Bail Reform Act), the judicial officer must find by (1) clear and convincing evidence, that the defendant is a danger to the community, or (2) a preponderance of the evidence, that the defendant poses a risk of flight. *See* 18 U.S.C. § 3142 (f); *United States v. Jackson*, 823 F.2d 4-5 (2d Cir. 1987); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562 (1986). *See also United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991). The judicial officer may then detain a person pending trial only if, the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

    (1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    (2)    the weight of the evidence against the person;

    (3)    the history and characteristics of the person, including:

        1.    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        2.    whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

    (4)    the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. §3142(g). The judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142(c).

The rebuttable presumption created by 18 U.S.C. § 3142(e) applies in this case because Luis Rosario and Capella-Matos are charged with a drug offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act. I have previously determined that there exists probable cause for the offense charged against these Defendants. Therefore, I find that under 18 U.S.C. §3142(e), there is a rebuttable presumption that no

condition or combination of conditions will reasonably assure the appearance of these Defendants or the safety of the community if they were released. If Luis Rosario and Capella-Matos fail to produce or proffer any credible evidence on their own behalf to rebut this presumption, the presumption alone may justify detention. *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Vires*, 637 F. Supp. 1343, 1351 (W.D.Ky. 1986).

## V. Discussion of Whether Detention is Warranted

### A. Defendants' Histories and Characteristics

#### 1. Luis Rosario

Luis Rosario refused to be interviewed by Pretrial Services so I have very little information about him other than that he is twenty-five years old and unverified information that he has been married for four years and works at a multi-service agency. Luis Rosario is a legal permanent resident. On February 23, 2007, Luis Rosario was arrested and charged in Massachusetts State Court (Lawrence District) with trafficking a controlled substance, conspiracy to violate the controlled substance act, distribution of a controlled substance in a school zone and operating recklessly. Those charges, which remain pending, are the result of the February 22, 2007 arrest described above. Luis Rosario was released by the State court on $2,000 bail.

#### 2. Antonio Capella-Matos

Capella-Matos was not interviewed by Pretrial Services and, therefore, I have no information about him. According to ICE, Capella-Matos is in the United States illegally. Capella-Matos true name is Plinio Vizcaino. However, during the course of this investigation, law enforcement officers knew him as Antonio Capella-Matos and a Massachusetts driver's license in that name with his picture was recovered.

B. <u>Nature of the Offense; Weight of the Evidence; Whether Detention Is Warranted</u>

1. <u>Nature of the Offense</u>

These Defendants are charged with a serious drug offense for which, if they are convicted, because of the amount of cocaine involved, provides for a mandatory minimum sentence of ten years and a maximum of life.

2. <u>Weight of the Evidence</u>

The weight of the evidence against these Defendants is substantial. Luis Rosario was being surveilled by law enforcement agents conducting an apparent drug transaction. He was followed from the area where the transaction took place and after attempting to elude law enforcement agents by driving recklessly, his passenger threw a bag out of the vehicle window which was later found to contain a kilogram of cocaine. Additionally, telephone conversations between Esquilin-Rodriguez and Luis Rosario were intercepted. While no mention was made of cocaine, the context makes it fairly clear that the two were discussing a drug transaction.

Capella-Matos was intercepted on numerous occasions having conversations with individuals charged in this Complaint and other individuals. While no mention of drugs or drug proceeds is made during these conversations, it is apparent from their context that they are discussing the purchase and sale of controlled substances. Additionally, Capella-Matos, after being *Mirandized*, admitted that he is was a multi-kilogram drug supplier.

3. <u>Whether Detention Is Warranted</u>

a. <u>Luis Rosario</u>

I find that Luis Rosario has failed to produce or proffer sufficient evidence to overcome the rebuttable presumption that he is a danger to the community and risk of flight and for that

reason, detention is warranted. Nevertheless, for the sake of completeness, I will address whether Rafael poses a danger to the community and risk of flight.

### I. Whether Luis Rosario Poses A Danger To The Community

The Government has alleged that Luis Rosario has conspired with others to distribute over five kilograms of cocaine. He was the driver of a vehicle from which one kilogram of cocaine was tossed while being chased by law enforcement officers. I have found that the weight of the evidence against Luis Rosario is substantial. At the same time, the only other evidence against Luis Rosario is an intercepted telephone conversation during which it appears that he purchases 200 grams of cocaine. Luis Rosario has no prior convictions on his criminal record. Under these circumstances, I cannot find by clear and convincing evidence that Rafael is a danger to the community and that there are no conditions or combination of conditions that I could impose that would assure the safety of the community if he were released. Therefore, I am relying on the rebuttable presumption to detain Luis Rosario on dangerousness grounds.

### ii. Whether Luis Rosario Poses A Risk Of Flight

Luis Rosario is a legal permanent resident. At the same time, Luis Rosario is facing a mandatory minimum sentence of ten years . I have found that the evidence against him is substantial and if he is convicted of the offense charged, he faces certain deportation. Additionally, because he was not interviewed by Pretrial Services, I essentially have no verified information concerning his background, his family ties or any other ties to this or some other community. Considering the totality of these circumstances, including, the strength of the Government's case, a potential ten year minimum/mandatory sentence and certain deportation if convicted, and the Court's lack of information concerning his ties to the community, I find by a

preponderance of the evidence that Luis Rosario poses a risk of flight and that there are no conditions or combination of conditions that I could impose that will assure his appearance in this Court as directed.

### b. Antonio Capella-Matos

I find that Capella-Matos has failed to produce or proffer sufficient evidence to overcome the rebuttable presumption that he is a danger to the community and risk of flight and for that reason, detention is warranted. His counsel essentially conceded that, at this time, he is unable to propose a suitable set of release conditions. Nevertheless, for the sake of completeness, I will address whether Capella-Matos poses a danger to the community and risk of flight.

### I. Whether Capella-Matos Poses A Danger To The Community

Capella-Matos has no known criminal record. As to the current charges, although law enforcement officers did not recover any cocaine in connection with any transaction in which he was involved, it is clear from the intercepts that he is a major cocaine dealer who was able to obtain substantial amounts of cocaine on short notice. Furthermore, after being *Mirandized,* he admitted to being a multi-kilogram cocaine dealer. Considering the totality of these circumstances, I find by clear and convincing evidence that Capella-Matos is a danger and that there are no conditions or combination of conditions that would assure the safety of the community if he were released.

### ii. Whether Capella-Matos Cristobal Poses A Risk Of Flight

If convicted of the charged offenses, Capella-Matos faces a mandatory minimum sentence of ten years incarceration and, because he is in this country illegally, certain deportation. I have found that the evidence against him is substantial. I have no information concerning his ties to

this or any other community. During this investigation, law enforcement officials knew this Defendant as Antonio Capella-Matos and they recovered a Massachusetts driver's license with his picture and that name; his true name is Plinio Vizcaino. Given the significant period of incarceration faced by Capella-Matos and certain deportation if he is convicted, given the strength of the Government's case, given that the Court has no information concerning his ties to the community, and given his use of a false identity, I find by a preponderance of the evidence that Capella Matos is a risk of flight and that there are no conditions or combination of conditions that I could impose that would assure his appearance as required.

## VI. Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1. That Luis Rosario and Antonio Capella-Matos be committed to the custody of the Attorney General, or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That Luis Rosario and Antonio Capella-Matos be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a Court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Luis Rosario and Antonio-Capella Matos are detained and confined shall deliver them to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

## VII. <u>RIGHT OF APPEAL</u>

THE PERSON OR PERSONS DETAILED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OF AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/ Timothy S. Hillman
TIMOTHY S. HILLMAN
MAGISTRATE JUDGE